UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JEAN FRANCO CORDERO ROMERO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00183-JRS-MJD |
| | ) | |
| U.S. IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, | ) | |
| ATTORNEY GENERAL OF THE UNITED | ) | |
| STATES, | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Jean Franco Cordero Romero is a noncitizen who was arrested by U.S. Immigration and Customs Enforcement ("ICE") officials on or around March 13, 2026, and is detained at the Clay County Jail in Brazil, Indiana. Mr. Cordero Romero now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or a bond hearing pursuant to 8 U.S.C. § 1226(a). Dkt. 1 at 13–14.

For the reasons explained below, the Court grants the petition to the extent that no later than **April 3, 2026**, Respondents must certify that they have either: (1) afforded Mr. Cordero Romero an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) released Mr. Cordero Romero from custody, under reasonable conditions of supervision.

## I.    Background

Mr. Cordero Romero is a citizen of Venezuela who entered the United States on April 21, 2022, at the port-of-entry in Eagle Pass, Texas. Dkt. 8-1 at 2. That day, ICE officers gave Mr.

1

Cordero Romero an interim notice authorizing parole under 8 U.S.C. § 1182(d)(5) and released him from custody. *Id.* After his release, Mr. Cordero Romero applied for asylum and was approved for work authorization. *Id.*; dkt. 1 ¶ 44.

On March 13, 2026, ICE officers arrested Mr. Cordero Romero in Chicago, Illinois when he presented himself at the Enforcement and Removal Operations Headquarters in Chicago, Illinois. *Id.* After confirming that Mr. Cordero Romero was removable, ICE officers terminated his parole and took him into custody pursuant to a Form 1-200 Warrant of Arrest for interior enforcement issued "pursuant to sections 236 [i.e., 8 U.S.C. § 1226] and 287 of the Immigration and Nationality Act." *Id.* That same day, ICE issued Mr. Cordero Romero a Notice to Appear for removal proceedings under 8 U.S.C. § 1299a. *Id.* at 6. Since then, Mr. Cordero Romero has been detained under the authority of ICE at the Clay County Jail.

There is no record that Mr. Cordero Romero moved for or has been given a custody re-determination hearing.

## II.     Discussion

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Mr. Cordero Romero claims that his current detention violates the Immigration and Nationality Act ("INA") and its regulations (Counts I and II), and the Due Process Clause of the Fifth Amendment (Count III). Dkt. 1 ¶¶ 51–61. Respondents argue that Mr. Cordero Romero is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2)(A); that, in the alternative, he is lawfully detained pursuant to 8 U.S.C. § 1226(a); and that his detention is constitutional. Dkt. 8.

2

The Court finds that Mr. Cordero Romero's detention is governed by § 1226(a) and that it is unlawful because he has not been afforded a bond hearing. Because Mr. Cordero Romero is entitled to habeas corpus relief on these grounds, the Court does not address his other arguments.

### A. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

> Section 1226(a) provides:
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on—
> >
> > (A) bond . . . ; or
> >
> > (B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the

noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

4

**B. Mr. Cordero Romero Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)**

The record reflects that Mr. Cordero Romero's detention is authorized by § 1226(a). As discussed further below, this makes him eligible for a bond hearing, and his continued detention without a bond hearing violates the INA.

This Court has previously determined that considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than noncitizens who have lived in the interior of the United States for years. *Morales Sandoval v. Crowley*, No. 2:25-CV-00560-JRS-MKK, 2025 WL 3760760, at *3–6 (S.D. Ind. Dec. 30, 2025). As the Court has previously explained, Respondents' interpretation of the statute when applied to noncitizens such as Mr. Cordero Romero (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *Id.*

The Respondents here cite contrary decisions regarding § 1225(b)(2)(A) but concede that this Court's previous analysis "control[s] the result in this case should the Court adhere to the legal reasoning in those prior decisions." Dkt. 8 at 13. Notably, the Respondents cite a recent Fifth Circuit Court of Appeals decision, which upheld the government's interpretation of § 1225(b)(2)(A) in finding that "seeking admission" is a permissible redundancy for "applicant for admission." *Buenrostro-Mendez v. Bondi*, 2026 WL 323330, at *5 (5th Cir. Feb. 6, 2026). The Court is not convinced, however, that the Seventh Circuit will follow *Buenrostro-Mendez* and therefore continues to rely on *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025), as persuasive precedent. In *Castañon-Nava*, the Seventh Circuit determined that the phrase "seeking admission" in § 1225(b)(2)(A) cannot be logically seen as synonymous with

"applicant for admission" as defined in § 1225(a)(1) without violating several established canons of statutory interpretation. 161 F.4th at 1061. This Court has applied those established canons of statutory interpretation in its previous cases and has reached the same conclusion. Because neither *Buenrostro-Mendez* nor the other cases cited by the Respondents are binding on this Court, the Court declines to depart from its previous reasoning.

Moreover, the undisputed facts demonstrate that Mr. Cordero Romero's detention is authorized by § 1226(a) rather than § 1225(b)(2)(A). When Mr. Cordero Romero arrived in the United States in April 2022, he underwent inspection by immigration officials at the port-of-entry in Texas. He was then released on parole and permitted to live and work within the United States for roughly four years. Then, in March 2026, immigration officials terminated Mr. Cordero Romero's parole and arrested him when he presented himself at ICE headquarters in Illinois. In doing so, immigration officials served Mr. Cordero Romero an administrative warrant citing § 1226(a) as the basis for his arrest and detention. *See Rodriguez-Acurio v. Almodovar*, 2025 WL 3314420, at *24 (E.D.N.Y. Nov. 28, 2025) ("Although not dispositive standing alone, Rodriguez-Acurio's arrest on a warrant under Section 1226 supports the conclusion that her detention is governed by Section 1226(a)'s discretionary framework."). In sum, the government's actions and its paperwork reflect that Mr. Cordero Romero's detention is authorized by § 1226(a). It cannot now maintain that he is subject to § 1225(b)(2) and therefore categorically ineligible for discretionary release. *See Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029524, at *6 (S.D. Ind. Oct. 30, 2025) (citing *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025).

6

### C. Opportunity for Bond Hearing

In the alternative, Respondents argue that Mr. Cordero Romero is being lawfully detained under § 1226(a) "because he will have the opportunity to receive a hearing before an Immigration Judge." Dkt. 8 at 19. Respondents therefore argue that this Court does not have jurisdiction over this matter due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence, however, that Mr. Cordero Romero will have a bond hearing. In fact, Respondents contend that Mr. Cordero Romero is ineligible for a bond hearing. Because an immigration judge has not "denied" or "revoked" bond, § 1226(e) does not have any bearing on this petition. Mr. Cordero Romero has not had an opportunity to meaningfully request and receive an individualized bond hearing. Thus, his detention pursuant to § 1226(a) is currently unlawful.

### III.    Scope of Relief

Mr. Cordero Romero is entitled to a bond hearing under § 1226(a), and he has not received one. Therefore, his continued detention without a bond hearing violates "the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Immediate release is the customary remedy in habeas proceedings. *See Dep't of Homeland Security v. Thursaissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, Mr. Cordero Romero maintains—and the Court agrees—that he is subject to § 1226(a), which allows the government to "continue to detain" him.

8 U.S.C. § 1226(a)(1). Mr. Cordero Romero's custody is not unlawful because of the very fact that he is detained. Rather, his custody is unlawful because he has not received the bond hearing that the law requires. Thus, the Court must order Respondents to follow the law that governs Mr. Cordero Romero's detention by providing an individualized bond hearing.

## IV.    Conclusion

The petition for a writ of habeas corpus is **granted** insofar as the Respondents will have **until April 3, 2026** to certify that Mr. Cordero Romero has (1) appeared for a bond hearing before an immigration judge consistent with 8 U.S.C. § 1226(a) and pertinent regulations, or (2) been released from detention.

The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 3/27/2026

_____
JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana


Distribution:

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Allison Rub
Allison Rub, PA
allison@allisonrubpa.com

Gina M. Shields
DOJ-USAO
Gina.Shields@usdoj.gov

8